UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
KATHERINE A. TELISKA,          )
                               )
         Plaintiff,            )
                               )
         v.                    )         Civil Action No. 09-2422 (RWR)
                               )
JANET NAPOLITANO,              )
                               )
         Defendant.            )
_____)
```

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Katherine A. Teliska filed this action against her former employer, the Secretary of the Department of Homeland Security ("DHS"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e <u>et</u> <u>seq</u>., alleging that the Secret Service, a DHS agency, subjected her to a hostile work environment in retaliation for her complaining about sexual harassment. DHS moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss Teliska's complaint for failure to state a claim for which relief can be granted.  Because Teliska's complaint pleads a plausible claim of retaliatory hostile work environment, DHS's motion will be denied.

<u>BACKGROUND</u>

In February 2006, Teliska lived in Odenton, Maryland and worked as an Executive Officer for Pentagon official Maxie McFarland.  Teliska applied through the Secret Service's Baltimore office for a position as a Secret Service Special Agent

("SA"). (Compl. ¶¶ 8-9.) SA Sean McCarthy was Teliska's point
of contact for interviews and other application activities with
the Secret Service. McCarthy conducted Teliska's initial
application interview in Baltimore. (Id. ¶¶ 10-12.) Teliska
alleges that on the day of the interview, McCarthy told her he
was attracted to her, asked her to refrain from applying to the
Secret Service because McCarthy would not be able to date an
applicant, and asked her to spend the following weekend with him
at his condominium in New York. Teliska declined McCarthy's
invitation (id. ¶¶ 17-20), and later informed McFarland of
McCarthy's inappropriate advances (id. ¶¶ 28).

In the Spring of 2006, McFarland instructed a colleague to
contact Secret Service SA Tom Armis and complain about McCarthy's
harassment of Teliska. (Id. ¶ 29.) According to the complaint,
as a result of McFarland's intervention, the Secret Service
investigated McCarthy's harassment of Teliska, and eventually
removed McCarthy from Teliska's application file as a recruiter.
(Id. ¶¶ 32-33.) Later in 2006, Teliska was interviewed by a
panel of Secret Service agents. During the panel interview,
Special Agent in Charge Ed Lugo informed Teliska that his office
was composed primarily of men, and asked whether that should
preclude him from hiring her "since [Teliska] obviously [had] a
'sting' out for men[.]" (Id. ¶¶ 38-40.)

In September 2006, the Secret Service hired Teliska to begin work in October 2006. (Id. ¶ 46.) According to Teliska, from the month she was hired through the beginning of December 2008, the Secret Service continuously retaliated against her for objecting to McCarthy's behavior. (Id. ¶ 47.) Teliska alleges that even though McCarthy had told her she would work in the Washington, D.C. region where she lived, the agency assigned her to New York and denied her a posting near Washington, D.C., falsely claiming no positions were available there (id. ¶¶ 48-49, 57); that the agency forced her to in-process in New York instead of following the normal procedure of having in-processing in the office of recruitment (Baltimore), imposing significant financial hardship on her (id. ¶¶ 50-53, 58); that her duties were reassigned during the United Nations General Assembly session in August 2008 in a manner that reduced her overtime hours; that the Secret Service denied her request for a hardship transfer to Washington D.C. in September 2008 (id. ¶¶ 69-79); that in November 2008 her supervisor who was good friends with McCarthy de-selected her for a Washington, D.C. assignment she requested because she sought to drive there in her personal car rather than in the agency vehicle he demanded she drive that she could not have used for personal errands, even though her replacement was not required to drive the agency vehicle (id. ¶¶ 83-90); that also in November 2008 her New York office never officially

notified her of her assignment by headquarters to an imminent
overseas Presidential protection detail which caused her to
nearly miss the departing military plane (id. ¶¶ 94-103); and
that the Secret Service denied her November 22, 2008 request to
protect Vice President-elect Biden on Thanksgiving and required
other agents, who had not volunteered, to work that detail (id.
¶¶ 104-105).

Teliska alleges that in November of 2008, she asked to speak
with John McQuade, Assistant to the Special Agent in Charge
("ATSAIC") in New York about "a potential EEO issue." (Id.
¶¶ 91-92.) On December 19, 2008, she contacted an EEO officer to
complain of sex discrimination and sexual harassment, and to
request counseling with an Agency EEO specialist. (Id. ¶ 106.)
According to Teliska, in January 2009, Evyenia Poumpouras, a
special agent supervised by McCarthy, falsely accused Teliska of
sleeping on the job and losing track of the whereabouts of the
protectee to whom she was assigned. Even though the Special
Agent In Charge of the New York office told Teliska that she was
not responsible for the incident, ATSAIC McQuade removed Teliska
from her duties as a midnight shift agent for the protectee and
moved her to midnight response for counterfeit money arrests.
The ATSAIC informed Teliska that her reassignment was based upon
Poumpouras's accusations. Teliska alleges that her reassignment
was humiliating and raised unfounded questions about her

competence and professionalism.  (Id. ¶¶ 112-125.)  Almost
immediately after she was reassigned, the supervisor of the
counterfeit squad accused Teliska of not following appropriate
protocol for the midnight response unit.  (Id. ¶¶ 130-131.)

On February 4, 2009, Teliska gave a written statement to
Inspector Eric Whatley and ATSAIC Kim Cheatle detailing the
actions that Teliska considered to be retaliation against her for
her complaint against McCarthy.  (Id. ¶¶ 134-135.)  Inspector
Whatley told Teliska that her complaint would be forwarded to the
EEO office, but asked Teliska whether she merely had a personal
conflict with Poumpouras.  (Id. ¶¶ 133, 136.)  The Secret Service
granted Teliska a transfer to the Washington D.C. office later
that month, since she married a Secret Service agent living
there.  (Id. ¶ 141.)  However, rather than continue her
assignment to an Electronic Crimes Squad for which she had the
requisite special training, the Secret Service assigned her to
the Washington Investigative Team and assigned to the Electronic
Crimes Squad agents who did not have the requisite special
training she had.  (Id. ¶¶ 142-143.)

On March 13, 2009, Teliska filed a formal EEO discrimination
complaint with the DHS EEO office, alleging claims of sex
discrimination and reprisal for having engaged in prior EEO
activity.  (Id. ¶ 181.)  Teliska left the Secret Service later
that month.  (Id. ¶ 144.)  In November 2009, the DHS issued a

final agency decision ("FAD") dismissing Teliska's EEO complaint as untimely. (<u>Id.</u> ¶¶ 191-193.)

Teliska filed this action on December 23, 2009. Teliska's complaint alleges one count of discriminatory hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a). (<u>Id.</u> ¶¶ 151-166.) The DHS has moved to dismiss Teliska's complaint, arguing that it failed to sufficiently allege a claim of retaliatory hostile work environment because her hostile work environment claim consists of discrete acts of retaliation, for some of which Teliska failed to exhaust her administrative remedies, and the remainder of which are insufficient as a matter of law to constitute a claim of retaliatory hostile work environment. Teliska opposes the motion, arguing that she timely pursued administrative relief and adequately pled a claim of retaliatory hostile work environment.

<u>DISCUSSION</u>

"A complaint can be dismissed under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff fails to state a claim upon which relief can be granted." <u>Maib v. FDIC</u>, 771 F. Supp. 2d 14, 17 (D.D.C. 2011) (quoting <u>Peavey v. Holder</u>, 657 F. Supp. 2d 180, 185 (D.D.C. 2009) (citing Fed. R. Civ. P. 12(b)(6))). "A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint." <u>Smith-Thompson v. Dist. of Columbia</u>, 657 F. Supp. 2d 123, 129 (D.D.C. 2009).

> To survive a motion to dismiss, a complaint must
> contain sufficient factual matter, acceptable as true,
> to "state a claim to relief that is plausible on its
> face." . . . A claim has facial plausibility when the
> plaintiff pleads factual content that allows the court
> to draw the reasonable inference that the defendant is
> liable for the misconduct alleged.

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 570 (2007)).  The

complaint must be construed in the light most favorable to the

plaintiff and "the court must assume the truth of all

well-pleaded allegations."  Warren v. District of Columbia, 353

F.3d 36, 39 (D.C. Cir. 2004).

"Under Federal Rule of Civil Procedure 8(a)(2), a claim need

only contain 'a short and plain statement of the claim showing

that the pleader is entitled to relief.'"  Sparrow v. United Air

Lines, Inc., 216 F.3d 1111, 1114 (D.C. Cir. 2000) (quoting Fed.

R. Civ. P. 8(a)(2)).  Plaintiffs filing employment discrimination

claims are not subject to heightened pleading standards,[1] see

Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (cited

approvingly in Twombly, 550 U.S. at 569-570), and they are not

required to "plead law or match facts to every element of a legal

---

[1] See Sparrow, 216 F.3d at 1118 ("We understand why district
courts may want to alleviate their crowded dockets by disposing
quickly of cases that they believe cannot survive in the long
run.  But . . . this may not be accomplished by employing
heightened pleading standards . . . .  Rather, federal courts and
litigants must rely on summary judgment and control of discovery
to weed out unmeritorious claims sooner rather than later.")
(internal quotation marks omitted).

theory." <u>Krieger v. Fadely</u>, 211 F.3d 134, 136 (D.C. Cir. 2000)
(internal quotation and citation omitted). Historically,

> [t]he D.C. Circuit has long recognized the ease with
> which a plaintiff claiming employment discrimination
> can survive a Rule 12(b)(6) motion to dismiss for
> failure to state a claim upon which relief may be
> granted. "Because racial discrimination in employment
> is a claim upon which relief can be granted, . . . 'I
> was turned down for a job because of my race' is all a
> complaint has to state to survive a motion to dismiss
> under [Rule] 12(b)(6)."

<u>Rouse v. Berry</u>, 680 F. Supp. 2d 233, 235 (D.D.C. 2010) (quoting

<u>Potts v. Howard Univ. Hosp.</u>, 258 Fed. Appx. 346, 347 (D.C. Cir.

2007)). All that is required of a complaint is that it provide

enough factual heft to show a plausible entitlement to relief,

that is, that it contain "enough facts to [nudge] a claim to

relief . . . across the line from conceivable to plausible[.]"

<u>Twombly</u>, 550 U.S. at 570.

"The elements of a claim of retaliation are that the

plaintiff engaged in a statutorily protected activity, the

employer treated the plaintiff adversely, and a causal connection

existed between the two." <u>Winston v. Clough</u>, 712 F. Supp. 2d 1,

11 (D.D.C. 2010) (citing <u>Wiley v. Glassman</u>, 511 F.3d 151, 155

(D.C. Cir. 2007); <u>Rochon v. Gonzales</u>, 438 F.3d 1211, 1216-20

(D.C. Cir. 2007); <u>Iweala v. Operational Techs. Servs.</u>, 634 F.

Supp. 2d 73, 83 (D.D.C. 2009) (internal quotation marks

omitted)). "Statutorily protected activities include the filing

of [EEO] complaints and the initiation of litigation to vindicate

claims of employment discrimination or retaliation." <u>Shipman v.
Vilsack</u>, 692 F. Supp. 2d 113, 116 (D.D.C. 2010) (quoting <u>Baloch
v. Norton</u>, 517 F. Supp. 2d 345, 354 (D.D.C. 2007) (citing <u>Forkkio
v. Powell</u>, 306 F.3d 1127, 1131-32 (D.C. Cir. 2002)).

"In this circuit, a hostile work environment can amount to
retaliation under Title VII." <u>Hussain v. Nicholson</u>, 435 F.3d
359, 366 (D.C. Cir. 2006) (citing <u>Singletary v. Dist. of
Columbia</u>, 351 F.3d 519, 526 (D.C. Cir. 2003)). To state a
hostile work environment claim, Teliska must allege that she
suffered harassment because of her protected activity, that her
employer knew or should have known of the alleged harassment and
failed to take remedial action, and that the hostile environment
interfered with her work. <u>Winston</u>, 712 F. Supp. 2d at 12 (citing
<u>King v. Pierce Assocs.</u>, 601 F. Supp. 2d 245, 248 (D.D.C. 2009)
(citing <u>Davis v. Coastal Int'l Sec., Inc</u>., 275 F.3d 1119, 1122-23
(D.C. Cir. 2002)); <u>Roberson v. Snow</u>, 404 F. Supp. 2d 79, 97 n.8
(citing <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993);
<u>Faragher v. Boca Raton</u>, 524 U.S. 775, 788 (1998)). "A hostile
work environment exists when 'the workplace is permeated with
discriminatory intimidation, ridicule, and insult that is
sufficiently severe or pervasive to alter the conditions of the
victim's employment and create an abusive working
environment[.]'" <u>Roberson</u>, 404 F. Supp. 2d at 97 n.8.

DHS argues that Teliska failed to exhaust her administrative remedies for all of the discrete incidents that she cites to support her claim of hostile work environment that occurred before October 20, 2008, which is 45 days before the FAD suggests Teliska first sought counseling.[2] (Def.'s Mem. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem.") at 8-12.) However, a "hostile work environment claim . . . 'is composed of a series of separate acts that collectively constitute one unlawful employment practice.'" Smith-Thompson v. Dist. of Columbia, 657 F. Supp. 2d 123, 131 (D.D.C. 2009) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002) and 42 U.S.C. § 2000e-5(e)(1)). "Unlike a claim premised on discrete acts of discrimination, a hostile work environment claim cannot be reduced to a single action on a single day because '[its] very

---

[2] "Before filing a Title VII suit, a federal employee must timely pursue her administrative remedies, following the requirements set forth in 29 C.F.R. § 1614." Hines v. Bair, 594 F. Supp. 2d 17, 22 (D.D.C. 2009). "If a plaintiff believes that she has been unlawfully discriminated against, 'she must consult an EEO counselor in an effort to resolve the situation informally.'" Id. (citing 29 C.F.R. § 1614.105(a)). This contact with the EEO counselor must occur within 45 days of the alleged discriminatory incident. Id. (citing 29 C.F.R. § 1614.105(a)(1)). If informal counseling fails to resolve the grievance, the employee then has 15 days from when the employee receives notice that counseling has ended to file a written complaint. See Chandler v. Bernanke, 531 F. Supp. 2d 193, 196 (D.D.C. 2008); 29 C.F.R. § 1614.106(b). After filing a written complaint, the employee may file a civil action once the agency issues an adverse final decision or 180 days elapse without a decision, whichever happens first. See 42 U.S.C. § 2000e-16(c).

nature involves repeated conduct' and it is based 'on the cumulative effect of individual acts.'" <u>Smith-Thompson</u>, 657 F. Supp. 2d at 131 (quoting <u>Morgan</u>, 536 U.S. at 115). For a hostile work environment claim, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." <u>Smith-Thompson</u>, 657 F. Supp. 2d at 131 (quoting <u>Morgan</u>, 536 U.S. at 115). DHS does not dispute that at least some acts occurred within the filing period (Def.'s Mem. at 15), so even if discrete acts Teliska complained of were not administratively exhausted and could not support stand-alone claims, they "may be considered as incidents supporting the retaliatory hostile work environment claim." <u>Graham v. Gonzalez</u>, Civil Action No. 03-1951 (RWR), 2005 WL 3276180, at *24 (D.D.C. September 30, 2005).

DHS also argues that the remaining incidents cited by Teliska fail to rise to the level necessary to support a hostile work environment claim, and that Teliska's complaint should be dismissed as an impermissible attempt to "bootstrap" unexhausted, discrete acts of discrimination into a retaliatory hostile work environment claim. (Def.'s Mem. at 13-24.) However, with all reasonable inferences drawn in her favor, her complaint contains enough facts to nudge her claim across the line from conceivable to plausible. Teliska alleges as protected activities that she

engaged in, at minimum, reporting McCarthy's misconduct to
McFarland in 2006,[3] asking the ATSAIC in November 2008 for an
appointment concerning a potential EEO issue, and initiating the
EEO proceeding in December 2008.  Teliska alleges as evidence of
pervasive discriminatory abuse that the Secret Service placed her
in a geographic location both to in-process and to work that was
punitive for her, denied her a hardship relocation and a
Washington D.C. assignment, unreasonably denied her overtime
opportunities that she sought to help offset the draining cost of
her adverse geographic location, caused her nearly to fail to
report for a Presidential protection assignment, damaged her
professional standing by removing her from a protection
assignment based upon false accusations of misconduct, and barred
her assignment to a special unit for which she was qualified
while assigning others to it who were unqualified.  Teliska's
complaint alleges that much of this purported harassment was
causally connected to her protected activity because it was
perpetrated by friends of McCarthy, the SA she complained about
in her initial complaint to McFarland.  (Compl. ¶¶ 82, 112, 127-
128.)  "A plaintiff alleging retaliation faces a low hurdle at

---

[3] Because DHS does not challenge that Teliska's reporting of
McCarthy's behavior to McFarland was a protected activity (Def.'s
Mem. at 22-23), this opinion will assume without deciding that
such activity was indeed protected.  See CSX Transp., Inc. v.
Commercial Union Ins., Co., 82 F.3d 478, 482-83 (D.C. Cir. 1986);
Felter v. Salazar, 679 F. Supp. 2d 1, 2 n.2 (D.D.C. 2010).

the motion to dismiss stage[.]" <u>Winston</u>, 712 F. Supp. 2d at 11 (citing <u>Rochon</u>, 438 F.3d at 1219-1220); <u>see</u> <u>also</u> <u>Ali v. Dist. of Columbia</u>, 697 F. Supp. 2d 88, 92 (D.D.C. 2010) (denying motion to dismiss the plaintiff's hostile work environment claim even though "it [was] unlikely that [the plaintiff's] claims of discrimination will ultimately prove meritorious"); <u>Vance v. Chao</u>, 496 F. Supp. 2d 182, 185, 187 (D.D.C. 2007) (citing <u>Twombly</u>, and denying a motion to dismiss, stating that at the motion to dismiss stage, "[the] plaintiff can meet her prima facie [sic] burden simply by alleging that the adverse actions [that were supported by facts in her complaint] were caused by her protected activity"); <u>Rhodes v. Napolitano</u>, 656 F. Supp. 2d 174, 187 (D.D.C. 2009) (finding the plaintiff's allegation that the defendant initiated the retaliatory action in response to her previous EEOC activity "sufficient to survive a motion to dismiss"); <u>Dave v. Lanier</u>, 606 F. Supp. 2d 45, 52-53 (D.D.C. 2009) (denying the defendant's motion to dismiss the plaintiff's claim of retaliation because "the plaintiff . . . made out a legally cognizable claim of retaliation by contending that he engaged in a protected activity by reporting the trainer's allegedly discriminatory conduct and that in response to his complaint, the defendant retaliated against him by subjecting him to materially adverse actions"); <u>Holmes-Martin v. Leavitt</u>, 569 F. Supp. 2d 184, 193 (D.D.C. 2008) (denying the defendant's motion

to dismiss the plaintiff's claim of hostile work environment because the plaintiff "alleged some conduct in support of her claim," and noting that a plaintiff is required to plead facts which "support," not "establish," the claim). Taken together, Teliska's allegations amply state a claim of a retaliatory hostile work environment. Therefore, the motion to dismiss Teliska's complaint will be denied.

## CONCLUSION AND ORDER

Teliska adequately alleges a plausible claim of retaliatory hostile work environment in her complaint. Accordingly, it is hereby

ORDERED that the defendant's motion [5] to dismiss be, and hereby is, DENIED.

SIGNED this 28th day of November, 2011.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge